IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| ABC Legal Services, Inc., | ) | |
| | ) | Case No. 3:14-4887-MBS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | **(Jury Trial Demanded)** |
| Korn Law Firm, P.A., | ) | |
| Peter D. Korn, Individually, | ) | |
| Robert Hall, | ) | |
| Clarkson and Korn, LLC. and | ) | |
| Butler & Hosch, P.A., | ) | |
| | ) | |
| Defendants, | ) | |

Plaintiff ABC Legal Services, Inc. ("ABC") brings this Complaint against Defendants Korn Law Firm, P.A. ("Law Firm"), Peter D. Korn, individually ("Korn"), Clarkson and Korn, LLC ("C&K"), Robert Hall ("Hall") and Butler and Hosch, P.A. ("Butler") [collectively, the "Defendants"] and alleges as follows:

**PARTIES**

1. Plaintiff ABC is a corporation organized and existing under the laws of the State of Washington, with its principal place of business in King County, Washington.

2. Defendant Law Firm is a professional association, organized and existing under the laws of the State of South Carolina, with its principal place of business in Richland County, South Carolina.

3. Defendant Korn is a resident and citizen of South Carolina and is, upon information and belief, an officer, director and sole shareholder of the Law Firm.

4. Defendant C&K is a professional association, organized and existing under the laws of the State of South Carolina, with its principal place of business in Richland County, South Carolina.

5. Defendant Hall is a resident and citizen of South Carolina and, upon information and belief, was an officer of Defendant Law Firm.

6. Upon information and belief, Defendant Butler is a professional association, organized and existing under the laws of the State of Florida, which is registered to transact business in South Carolina and which transacts business in Richland County, South Carolina.

## JURISDICTION & VENUE

7. This Court has jurisdiction of this action under 28 U.S.C. § 1332(a) because the matter in controversy is in excess of Seventy-Five Thousand and No/100 ($75,000.00) Dollars, exclusive of interest and costs, and the action is between citizens of different States.

8. Venue is proper in this district under 28 U.S.C. § 1391(b).

## FACTS

9. From 2009 to the present, Plaintiff ABC has provided certain legal support services to and for Defendants Law Firm and/or Korn, including serving Summons and Complaints prepared by Defendants Law Firm and/or Korn.

10. At all times relevant hereto, Defendant Korn was and remains an attorney licensed to practice law in the State of South Carolina. As such, Defendant Korn was and remains subject to the South Carolina Rules of Professional Conduct while acting in his capacity as an attorney.

11. Defendant Korn established Defendant Law Firm in 1989.

12. Over the years, Korn focused his practice of law on debt collection and related matters, through which Korn and Law Firm undertook the representation of many banking and financial institutions in their efforts to collect debts from defaulted borrowers on home loans and other similar transactions.

13. As early as 2009, Korn and Law Firm established a relationship with ABC to provide legal support services in conjunction with Korn and the Law Firm's debt collection practice, including most notably providing service of process to Korn and Law Firm.

14. In order to provide services to Korn and Law Firm, ABC engaged the services of many independent contractor process servers.

15. When contracted by Korn and Law Firm to provide its support services, ABC routinely paid its independent contractors in advance of its receipt of payment for services rendered from Korn and/or Law Firm.

16. Korn and Law Firm began to accrue a sizable balance owed to ABC as early as October, 2011, for services rendered in serving process and providing other related services for the many legal cases that Korn and Law Firm had commenced on behalf of their clients.

17. ABC was consistently reassured by Hall, who was acting in his capacity as an officer of Law Firm and an agent of Korn, that the outstanding invoices would be paid. Korn and Law Firm gave various explanations for the delay in reimbursing ABC for its work, including delays in the reimbursements made by the lender clients for the services rendered by Korn and the Law Firm.

18. In reliance upon such reassurances and other promises that all invoices would be paid, ABC continued to provide services to Korn and Law Firm. Still, the arrearage steadily crept larger and larger over the passage of time, until culminating in the sum of Seven Hundred

Sixty Thousand Three Hundred Forty-Four and No/100 ($760,344.00) Dollars, as of August 5, 2014, all as set forth in the Verified Statement of Account attached hereto as <u>Exhibit A</u> and incorporated herein by reference.

19.     On September 23, 2014, Defendant Law Firm entered a Confession of Judgment in favor of ABC in the amount of Seven Hundred Forty Five Thousand Seven Hundred Seventy Eight and 08/100 ($745,478.08) Dollars, a copy of which Confession of Judgment is attached hereto as <u>Exhibit A</u>.

20.     For the services represented by the outstanding balance owed, ABC paid out hundreds of thousands of dollars to third party independent contractors, all of whom were paid in full despite the nonpayment by Korn and Law Firm.

21.     But for the services provided by ABC, Korn and Law Firm, including most significantly the service of process, Korn and Law Firm would have been unable to represent their clients and/or to generate the substantial legal fees which they were paid.

22.     But for the services provided by ABC, the value of the Law Firm and/or its assets would have been dramatically lessened and its attractiveness to third parties for a merger or acquisition would have been dramatically diminished.

23.     Upon information and belief, much of the balance now owed to ABC was paid to Defendants Korn and/or Law Firm by the clients whom they were representing and/or by third parties through the collection and foreclosure processes. For example, Law Firm would routinely ask ABC for individual invoices for the separate individual cases which it was prosecuting so that Law Firm could include the expense in an invoice to the client and/or in its cost accounting to the Courts.

24. To the extent that Korn and/or Law Firm submitted an invoice to a client for payment and/or a statement of costs to a Court, which included a line item for services provided by ABC, and the expense was paid, Korn and/or Law Firm became an escrow agent for the receipt of ABC's money and for the payment of its invoices. Upon information and belief, this would account for the vast majority of the balance owed to ABC which was has been confessed by Defendant Law Firm.

25. Rather than discharge the duties as escrow agent, however, Defendants Korn and Law Firm misappropriated the payments which were intended for ABC and used the money instead to pay salaries and distributions to Korn or others and/or to pay for other expenses of Law Firm.

26. Even to the extent that Korn and/or Law Firm did not submit an invoice to a client for payment and/or a statement of costs to a Court, which included a line item for services provided by ABC, Korn and the Law Firm nonetheless remained legally and contractually bound to pay for the services provided.

27. Upon information and belief, Defendant Butler began to evaluate Defendant Law Firm for a merger or acquisition in late 2013 or early 2014.

28. Upon information and belief, the due diligence surrounding the potential acquisition and/or merger of Defendants Butler and Law Firm or the evaluation of the assets of Law Firm for acquisition would have involved a review of the books and records of Law Firm.

29. Upon information and belief, Defendant Butler entered into an agreement to acquire the assets of Defendants Korn and/or Law Firm.

30. Upon information and belief, Defendant Butler knew of the existence of the indebtedness of ABC and knew or should have known of its potential claims against Korn and Law Firm prior to entering into its business transaction with Defendants Korn and/or Law Firm.

31. Upon further information and belief, the transaction between Defendant Butler and Defendants Korn and/or Law Firm was ultimately structured as an asset sale in large part as an attempt to avoid ABC's rights as a creditor of Korn and Law Firm.

32. Upon further information and belief, the "assets" acquired by Defendant Butler would have included hundreds (if not thousands) of foreclosure and collection cases in which ABC had made the generation of legal fees possible through its service of process, the expense of which remained unpaid. To the extent that these "assets" had value, the value was directly and positively impacted by the services rendered by ABC.

33. Contemporaneous with the Butler transaction, Defendant Korn formed Defendant C&K, although its distinction from Defendant Law Firm is dubious. For example:

   a. A Google search for "Clarkson and Korn" leads to the website for Defendant Law Firm;

   b. A Google search for "Wylie Clarkson" lead to the website for Defendant Law Firm;

   c. Clarkson and Korn occupy the same building as Defendant Law Firm;

   d. The South Carolina Bar website lists Wylie Clarkson as being employed by Clarkson and Korn, which firm has the same phone number as Defendant Law Firm.

34. Upon information and belief, the "assets" of Defendant Law Firm prior to the Butler transaction would have consisted in large part of foreclosure and collection files for which ABC had provided the service of process and for which ABC would not have been paid.

35. Upon information and belief, the "assets" of Defendant Law Firm prior to the Butler transaction were ultimately either retained by Defendants Korn and Law Firm and/or transferred to Defendants Butler and/or C&K.

36. Upon information and belief, since acquiring the "assets" of Defendant Law Firm, Defendant Butler has earned fees from cases in which ABC provided the service of process and/or has invoiced debtors and/or petitioned Courts for costs associated with collections and foreclosures which would include payment for services rendered by ABC.

37. To the extent that Korn and/or Law Firm retained any "assets" consisting of collection and foreclosure cases, then upon information and belief, Defendant Korn and/or Law Firm have continued to earn fees from cases in which ABC provided the service of process and/or has invoiced debtors and/or petitioned Courts for costs associated with collections and foreclosures which would include payment for services rendered by ABC.

38. To the extent that C&K acquired any of the "assets" of Defendant Law Firm, then upon information and belief, since acquiring the "assets" of Defendant Law Firm, Defendant C&K has earned fees from cases in which ABC provided the service of process and/or has invoiced debtors and/or petitioned Courts for costs associated with collections and foreclosures which would include payment for services rendered by ABC.

39. Minimally, ABC is entitled to an accounting from all Defendants with regard to the invoicing and collection of expenses in the various cases in which ABC has provided services and has not been properly paid.

## FIRST CAUSE OF ACTION AS AGAINST DEFENDANTS KORN AND LAW FIRM
**(Breach of Contract)**

40. Each and every allegation in the preceding paragraphs is reiterated as if set forth verbatim.

41. The Parties entered into a binding agreement for the service of Summons and Complaints and or related services (the "Contract"), as evidenced by the course of conduct and course of dealing between the Parties.

42. At all times relevant hereto, Defendant Korn was and remains an attorney licensed to practice law in the State of South Carolina.

43. Defendant Law Firm was never admitted to practice law in South Carolina or elsewhere.

44. Upon information and belief, Defendant Korn and/or other attorneys acting under his direction and supervision signed hundreds (if not thousands) of petitions to Courts accounting for costs and fees which were owed by debtors, including expenses owed by ABC.

45. While Defendant Law Firm is certainly a party to the Contract, Defendant Korn is likewise a party in that the representation which was being provided by Defendants Korn and Law Firm to their clients, which led to the incurrence of the ABC expenses, are services which could only be performed by a licensed attorney.

46. The Defendants breached the Contract by delaying, deferring and failing to pay Plaintiff's invoices as they became due.

47. Such breach has directly and proximately caused Plaintiff ABC damages in the amount of Seven Hundred Sixty Thousand Three Hundred Forty-Four and No/100 ($760,344.00) Dollars, as of August 5, 2014.

### SECOND CAUSE OF ACTION AS TO ALL DEFENDANTS
**(Quantum Meruit/Unjust Enrichment)**

48.     Each and every allegation in the preceding paragraphs is reiterated as if set forth verbatim.

49.     By providing valuable services to and for the Defendants, Plaintiff ABC has conferred a benefit upon the Defendants.

50.     The Defendants have realized that benefit by having various individuals and entities served with process (i.e. Summons and Complaints) and by successfully pursuing collections and other legal actions initiated therefrom, for which Defendant Law Firm has profited and Defendant Korn has received compensation.

51.     Under the conditions and circumstances of this action, it would be unjust for the Defendants to retain the benefits conferred upon them without paying their fair value, which, as of August 5, 2014, is calculated to be Seven Hundred Sixty Thousand Three Hundred Forty-Four and No/100 ($760,344.00) Dollars.

52.     ABC provided legal support services, including service of process and related services, on hundreds (if not thousands) of cases which were originated by Defendants Korn and Law Firm and which now either remain in their possession and control or were transferred to Defendants Butler and/or C&K.

53.     By virtue of the services provided by ABC, the Defendants were able to prosecute claims for their clients and to generate substantial legal fees and profits.

54.     But for the services provided by ABC, the fees earned by the Defendants would not have been possible, would have been substantially and materially less and/or would have

9

required the Defendants to incur additional expense elsewhere to replace the services provided by ABC.

55.     The Defendants have been and continue to be unjustly enriched by earning fees and profits, which were only made possible through the services of ABC, while at the same time refusing to pay ABC.

56.     ABC is entitled to and prays for a judgment against the Defendants in quantum meruit and unjust enrichment in an amount not less than the unpaid balance owed for services rendered, together with interest and the costs of this action.

## THIRD CAUSE OF ACTION AS TO ALL DEFENDANTS
**(Accounting)**

57.     Each and every allegation in the preceding paragraphs is reiterated as if set forth verbatim.

58.     Upon information and belief, the Defendants entered into contracts with banks, mortgage companies, and other financial institutions (each a "Client" or collectively the "Clients") to provide legal services, including, but not limited to initiating legal actions for collections, foreclosure, and other lawsuits to collect monies due the Clients.

59.     Upon information and belief, each Client contract with the Defendants provided for the advancement and/or reimbursement of certain litigation costs, including but not limited to filing fees and service of process fees.

60.     Under the Contract with Plaintiff ABC, Defendants Law Firm and Korn hired Plaintiff ABC to serve Summons and Complaints, prepared by Defendants Law Firm and Korn, pursuant to their Client contracts.

61. Thereafter, upon information and belief, the Defendants Law Firm and Korn periodically billed their Clients seeking reimbursement for advanced litigation costs, including service of process fees.

62. Upon information and belief, following the Butler transaction, the cases which had been handled by Defendants Korn and Law firm were either (a) retained by them, (b) transferred to Defendant Butler and/or (c) transferred to Defendant C&K.

63. Upon information and belief, since the Butler transaction, the cases which had been handled by Defendants Korn and Law Firm and which were either (a) retained by them, (b) transferred to Defendant Butler and/or (c) transferred to Defendant C&K have resulted in petitions to Courts seeking reimbursement for fees and costs and/or reinstatement letters to borrowers which would include the payments of fees and costs.

64. Therefore, Plaintiff ABC is entitled to and demands an accounting of: (i) all monies billed by each of the Defendants to each Client for service of process and related services provided by ABC; (ii) all monies received from each of the Defendants in payment of service of process and related services provided by ABC; (iii) all accounts receivable due to each Defendants related to cases in which debtors were billed or invoiced for unpaid fees and expenses, including service of process and related fees due to ABC; and (iv) all unbilled service of process and related fees for services provided by ABC since June 1, 2012.

### FOURTH CAUSE OF ACTION AS AGAINST  DFENDANTS KORN, LAW FIRM AND HALL
**(Fraud)**

65. Each and every allegation in the preceding paragraphs is reiterated as if set forth verbatim.

66. On several occasions, Defendant Korn, Hall and/or other officers of the Law Firm have represented to Plaintiff ABC that the Defendants intended to and would pay the outstanding balance and satisfy the debt owed Plaintiff ABC (the "Representation").

67. This Representation was false each and every time when made.

68. Likewise, this Representation, each and every time when made, was material, as Plaintiff ABC would not have continued to provide legal support services to and for the Defendants, which, as a result, increased the total outstanding balance due Plaintiff ABC.

69. At each time the Representation was made, the Defendants had knowledge that they could not and did not intend to pay the outstanding balance owed Plaintiff ABC. Such knowledge is apparent by the Defendants' actions over two (2) years, the formation of a new law firm entity, and the merger with/acquisition by Defendant Butler, thereby attempting to avoid various debts to creditors such as Plaintiff ABC.

70. The Defendants made the Representation to Plaintiff ABC with the intent of inducing Plaintiff ABC to continue to provide legal support services while knowing that they could not and would not pay for services rendered.

71. Plaintiff ABC was ignorant of the falsity of the Representation.

72. Plaintiff ABC relied on the truth of the Representation by continuing to provide legal support services to and for the benefit of the Defendants.

73. Plaintiff ABC had a right to rely on each Representation made.

74. As a direct and proximate result of its reliance on each Representation made, Plaintiff ABC sustained damages, in an amount equal to Seven Hundred Sixty Thousand Three Hundred Forty-Four ($760,344.00) Dollars.

75. Here, the Defendants' willful, wanton, and reckless behavior warrants the imposition of punitive damages against them in an amount that would be just.

### FIFTH CAUSE OF ACTION AS AGAINST DEFENDANT KORN
(Constructive Trust)

76. Each and every allegation in the preceding paragraphs is reiterated as if set forth verbatim.

77. Defendant Korn, as the sole shareholder and director of the Law Firm, became Trustee for the benefit of the Law Firm's creditors (including Plaintiff ABC) when he learned that the Law Firm was insolvent and elected to attempt to reorganize and reform the Law Firm by forming a new law firm.

78. As a result of the insolvency of the Law Firm, Plaintiff ABC requests that the Court impose a constructive trust on all monies paid to or for the benefit of Defendant Korn by the Law Firm for the benefit of Plaintiff.

79. Moreover, as a result of the insolvency of the Law Firm, Plaintiff ABC requests that this Court hold Defendant Korn personally accountable for his acts and omissions as a Trustee of the Law Firm's creditors and award Plaintiff ABC damages for his improper acts and omissions, as a Trustee, in such amount as this Court may deem just and proper.

### SIXTH CAUSE OF ACTION AS AGAINST ALL DEFENDANTS
(South Carolina Unfair Trade Practices Act – SC Code Ann. §39-5-140)

80. Each and every allegation in the preceding paragraphs is reiterated as if set forth verbatim.

81. This cause of action is brought pursuant to the South Carolina Unfair Trade Practices Act.

82. The Defendants; actions were performed during the course of commerce within the State of South Carolina.

83. The Defendants' actions were unfair, deceitful, and deceptive in a number of different respects, including but not limited to:

   a. Promising that payment for past due services was forthcoming in order to induce further services;

   b. Petitioning the Courts for fees and expenses incurred, including expenses incurred by ABC, without reimbursing ABC;

   c. Invoicing clients and/or debtors for fees and expenses incurred, including expenses incurred by ABC, without reimbursing ABC;

   d. Structuring the transfer of cases and clients in such a manner as to seek to escape the indebtedness owed to ABC; and

   e. In such other particulars as the evidence in the case may demonstrate.

84. The unfair, deceitful and deceptive actions of the Defendants affect the public interest in that they have a direct relationship to, and the negative effect on, the operation of the legal system, the administration of justice, and to the ability of defaulted debtors and homeowners to cure their loan defaults.

85. The unfair, deceitful and deceptive actions of the Defendants are capable of repetition and, in fact, have been repeated as set forth herein.

86. The unfair, deceitful and deceptive actions of the Defendants were willful and knowing, based upon the fact that all Defendants are either attorneys licensed to practice law and/or officers of law firms who were aware, or should have been aware, of the illegality of their conduct, but who persisted nonetheless in violation of the South Carolina Unfair Trade Practices

Act. For example, the Defendants were presumably aware of the line of cases in which the South Carolina Supreme Court has consistently and repeatedly sanctioned attorneys for the failure to pay court reporters. See <u>In re Hatley</u>, 400 S.C. 470, 735 S.E.2d 488 (2012), <u>In re Hursey</u>, 395 S.C. 527, 719 S.E.2d 670 (2011), <u>In re Longtin</u>, 393 S.C. 368, 713 S.E.2d 297 (2011), <u>In re Crummey</u>, 388 S.C. 286, 696 S.E.2d 589 (2010), <u>Matter of Smith</u>, 296 S.C. 86, 370 S.E.2d 876 (1988).

87. The Plaintiff is entitled to and prays for an award of damages in a sum not less than the amount owed for its outstanding invoices, which amount should be trebled in light of the willful and knowing conduct of the Defendants, together with an award of fees and costs all as provided for in the South Carolina Unfair Trade Practices Act.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff ABC requests that judgment be entered in its favor against the Defendants, jointly and severally, as follows:

1. Actual damages, including the debt owed, in an amount of Seven Hundred Sixty Thousand Three Hundred Forty-Four and No/100 ($760,344.00) Dollars, as of August 5, 2014;

2. An award of quantum meruit / unjust enrichment in an amount not less than Seven Hundred Sixty Thousand Three Hundred Forty-Four and No/100 ($760,344.00) Dollars, as of August 5, 2014;

3. Accrued and prejudgment interest;

4. Costs of collection and attorneys' fees;

5. Punitive damages in an amount to punish the Defendants for the willful, wanton, and reckless behavior and sufficient to deter the Defendants and others from similar conduct in the future;

15

6. Treble damages in accordance with the South Carolina Unfair Trade Practices Act;

7. A full accounting as provided for herein;

8. Such other and further relief as this Court deems just and proper.

JURY TRIAL DEMANDED.

        Respectfully submitted,

        **BLAND RICHTER, LLP**
        *Attorneys for Plaintiff*

        s/Ronald L. Richter, Jr.
        Ronald L. Richter, Jr. (Federal Bar No. 66377)
        s/Scott M. Mongillo
        Scott M. Mongillo (Federal Bar No. 7436)
        Peoples Building
        18 Broad Street, Mezzanine
        Charleston, South Carolina 29401
        843.573.9900 (telephone)
        843.573.0200 (facsimile)
        ronnie@blandrichter.com (e-mail)

        s/Eric S. Bland
        Eric S. Bland (Federal Bar No. 64132)
        1500 Calhoun Street
        Post Office Box 72
        Columbia, South Carolina 29202
        803.256.9664 (telephone)
        803.256.3056 (facsimile)
        ericbland@blandrichter.com (e-mail)

Charleston, South Carolina
December 30, 2014