## EXHIBIT - B

## EXCLUDED ASSETS

(1)    All accounts receivable of the Business payable or received prior to May 1, 2014 and all

proceeds thereof, including, without limitation, those accounts receivable.

(2)    All cash on hand or in bank deposits, and all certificates of deposit (the "Cash"), excluding customer deposits and advance customer payments for an event to be performed after the Closing Date;

(3)    all trade accounts receivable and all rights to receive payments arising out of sales or services rendered, together with the proceeds in respect of any such accounts receivable which collected prior to May 1, 2014 (the "Excluded Accounts Receivable");

(4)    Except as provided in Schedule 1.1(f), the real property leases, subleases, licenses and other occupancy agreements as to which Seller is the lessee or sublessee, together with any options to purchase the underlying property and leasehold improvements thereon, and in each case all other rights, subleases, licenses, permits, deposits and profits appurtenant to or related to such leases, subleases, licenses and other occupancy agreements (collectively, the "Real Property Lease");

35

**EXHIBIT "A", Page 24 of 47**

## EXHIBIT - C

## CUSTOMER LIST

The Customer List consist of the names and addresses of those Customers identified hereafter which have been delivered to Buyer and accepted by Seller.

Brumbaugh & Quandahl, PC
Collins Asset Group, LLC
Ford Motor Credit Company, LLC
Hammond School
Law Office of Fred Hanna
Two of Mr. Korn's companies (KB Collections, LLC and Kimexco, Ltd)
Mendelson Law Firm
Midland Funding, LLC/Midland Credit Management, Inc.
NCO
Oliphant Financial, LLC
Troy Capital
Velocity Investments, LLC

35

EXHIBIT - D

OTHER ACQUIRED ASSETS

35

## EXHIBIT "E"

### ASSUMED OR ASSIGNED CONTRACTUAL LIABILITIES

### (COPIES OF THESE DOCUMENTS ARE ATTACHED HERETO)

Any and all contracts with customers of Seller more fully identified on the customer list attached hereto as Exhibit "C".

35

EXHIBIT "F"
TRANSFERRED EMPLOYEES

1. Tom Bijak
2. Twyla Brantley
3. Janelle Aukland
4. Earle Britton
5. Jason ("Cody") Davis
6. Harrison Gilbert
7. Meghon Roberts
8. Haley Sklodoski

9. Deborah Busher (25% use)
10. Joey Conway  (25% use)

Buyer shall be responsible for payroll taxes for employees 1-8 effective May 1, 2014.  Buyer shall not be responsible for payroll taxes for employees 9 and 10, but shall be responsible for and pay Seller 25% of the yearly gross salaries of these two employees, payable twice monthly.

35

EXHIBIT "G"

## BILL OF SALE

KNOW ALL MEN BY THESE PRESENTS, that pursuant to the Asset Purchase Agreement ("Agreement") dated as of April __6__, 2014, by and between Clarkson and Korn, LLC ("Buyer"), and Korn Law Firm, P.A. of South Carolina, a South Carolina Corporation, ("Seller"), and for good and valuable consideration, the receipt of which is hereby acknowledged, Seller does hereby sell, transfer and assign to Purchaser, its successor and assigns, all of Seller's right, title and interest in and to the Acquired Assets, including, without limitation, those specific assets identified on Exhibits A and C attached hereto.

All capitalized terms used herein, unless otherwise defined herein, have the same meaning as in the Agreement.

This Bill of Sale is subject to all of the terms and conditions of the Agreement.

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed this __11__ day of April, 2014, but which shall be effective as of the Effective Date.

Korn Law Firm, P.A. of South Carolina

BY: _____

Peter D. Korn, __President__

35

**EXHIBIT "H"**

**DISCLOSURE SCHEDULE**

NO EXCEPTIONS MADE TO REPRESENTATIONS & WARRANTIES

EXHIBIT "I"

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | |
| | ) | NON-COMPETITION AGREEMENT |
| COUNTY OF RICHLAND | ) | |

**THIS NON-COMPETITION AGREEMENT** by and between Korn Law Firm, P.A. of South Carolina, ("Seller") and Peter D. Korn, ("Guarantor"), individually, & Clarkson and Korn, LLC, ("Buyer") made and entered into this _15_ day of April, 2014,

**WHEREAS**, Buyer and Seller have entered into an Asset Purchase Agreement (as herein defined) for the purchase and sale of all of the Acquired Assets of the Business, as defined in the Asset Purchase Agreement; and

**WHEREAS**, a material part of the consideration for the purchase of the Acquired Assets is compliance by Seller with the terms of a Non-competition Agreement; and

**WHEREAS**, the parties desire to enter into an agreement to satisfy the consideration required under the Purchase Agreement.

**NOW, THEREFORE**, in consideration of the mutual promises and covenants contained herein and other valuable consideration the receipt and sufficiency of which is hereby acknowledged, the undersigned do hereby agree as follows:

1.    Definitions. The following terms and definitions shall apply to this Agreement:

    1.    Agreement. The "Agreement" means this Non-Competition Agreement.

    2.    Asset Purchase Agreement. The "Asset Purchase Agreement" means that certain Asset Purchase Agreement entered into by and between Seller and Buyer on the _15_ day of April, 2014,  for the purpose of memorializing the Agreement by Buyer to purchase and Seller to sell all of Seller's right, title and interest in and to the Acquired Assets as defined in said Asset Purchase Agreement.

    3.    Closing Date. The "Closing Date" shall be the date of the closing required pursuant to the terms of the Asset Purchase Agreement.

    4.    Restriction Period. The "Restriction Period" shall mean the two (2) year period following the Closing Date of the Asset Purchase Agreement.

Other terms may be defined elsewhere in this Agreement. Such terms shall bear the same meaning throughout this Agreement as given to them where defined. Certain terms used in this Agreement are defined in the Purchase Agreement.

2.    Covenant Not to Compete.  Seller, Korn Law Firm, P.A. and Peter D. Korn, individually, his heirs and assigns, do hereby agree that during the Restriction Period, neither Seller nor Peter D. Korn individually, his heirs and assigns, shall directly or indirectly compete with Buyer or otherwise engage in the collection business within the State of South Carolina either in an individual capacity

35

or as an agent, officer, executive, employee, director, shareholder, partner, or owner of any corporation, partnership, joint venture, or other business enterprise.

Seller has read and carefully considered the provisions of this section 2 and agrees that the restrictions set forth in this section 2, including, but limited to, the time restriction and geographical areas of restriction are fair and reasonable and are reasonably required for the protection of Buyer, and its officers, directors, shareholders, and other employees. In the event, not withstanding the above, any of the provisions of this section 2 shall be held to be un-enforceable, the remaining provisions hereof continue to be valid and enforceable as though the invalid or unenforceable parts had not been included herein. In the event any of the provisions of this section 2 relating to time period or geographical area restrictions shall be held declared by a court of competent jurisdiction to exceed the maximum restrictiveness such court deems reasonable and enforceable, the time period or geographical area restriction or related aspects deemed reasonable and enforceable by the court shall become and thereafter be the maximum -restriction in such regard, and the provision shall remain enforceable to the fullest extent deemed reasonable by the court.

3. <u>Equitable Relief</u>.  The parties acknowledge that it is difficult, if not impossible, to measure in money the damages that would result by reason of a party's breach of this Agreement. It is therefore agreed that the provisions of this Agreement shall be enforceable by injunction, specific performance, or other equitable relief, without reference to whether an adequate remedy at law may be available.

4. <u>Survival of Terms of Agreement</u>.  All agreements, representations, warranties, terms and conditions set forth in this Agreement shall survive the execution and delivery of this Agreement and the consummation of the transactions provided for herein.

5. <u>Successors and Assigns</u>.  This Agreement shall be binding upon and inure to the benefit of the successors, assigns, personal representatives and heirs, as applicable, of Buyer and Seller.

6. <u>Headings</u>.  The various headings used in this Agreement as headings of sections, articles or otherwise are for convenience only and shall not be used in interpreting or limiting the text in which they appear.

PLEASE NOTE:  BY SIGNING THIS NONCOMPETITION AGREEMENT, SELLER AND PETER D. KORN ARE HEREBY CERTIFYING THAT THEY (A) RECEIVED A COPY OF THIS AGREEMENT FOR REVIEW AND STUDY BEFORE EXECUTING IT; (B) READ THIS AGREEMENT CAREFULLY BEFORE SIGNING IT; (C) HAD SUFFICIENT OPPORTUNITY TO CONFER WITH AN ATTORNEY OF THEIR CHOICE; (D) HAD SUFFICIENT OPPORTUNITY BEFORE SIGNING THE AGREEMENT TO ASK ANY QUESTIONS THEY HAD ABOUT THE AGREEMENT AND RECEIVED SATISFACTORY ANSWERS TO ALL SUCH QUESTIONS; AND (E) UNDERSTANDS THEIR RIGHTS AND OBLIGATIONS UNDER THE AGREEMENT.

EXHIBIT "A", Page 32 of 47

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement on the date first above written.

WITNESSETH:                                              AS TO SELLER:

_____                          _____
                                                              Peter D. Korn, individually

_____

_____                          Korn Law Firm, P.A. of South Carolina
                                                              BY: _____
_____                              Peter D. Korn, _President_

                                                              AS TO BUYER:

                                                              Clarkson and Korn, LLC

_____                          BY: _____
                                                                  Wylie W. Clarkson, Managing Member

35

STATE OF SOUTH CAROLINA )
                              )       **PROBATE**

COUNTY OF RICHLAND )

PERSONALLY appeared the undersigned witness and made oath that (s) he saw the within named Clarkson and Korn, LLC, by Wylie W. Clarkson, Managing Member, sign, seal and, as his act and deed, deliver the within Non-Competition Agreement and that (s)he with the other witness subscribed above, witnessed the execution thereof.

Sworn to before me this 14
day of April, 2014.
_____
Notary Public for South Carolina
My Commission Expires: 5 | 16 | 2018

STATE OF SOUTH CAROLINA )
                              )       **PROBATE**

COUNTY OF RICHLAND )

PERSONALLY appeared the undersigned witness and made oath that (s) he saw the within named Peter D. Korn, individually, sign, seal and, as his act and deed, deliver the within Non-Competition Agreement and that (s) he with the other witness subscribed above, witnessed the execution thereof.

Sworn to before me this 11th
day of April, 2014.
_____
Notary Public for South Carolina
My Commission Expires: 5 | 16 | 2018

STATE OF SOUTH CAROLINA )
                              )       **PROBATE**

COUNTY OF RICHLAND )

PERSONALLY appeared the undersigned witness and made oath that (s)he saw the within named Korn Law Firm, P.A. of South Carolina of South Carolina, by Peter D. Korn, its ___Owner___ sign, seal and, as his act and deed, deliver the within Non-Competition Agreement and that (s)he with the other witness subscribed above, witnessed the execution thereof.

Sworn to before me this 11th
day of April, 2014.
_____
Notary Public for South Carolina
My Commission Expires: 5 | 16 | 2018

**EXHIBIT "A", Page 34 of 47**

EXHIBIT "J"

STATE OF SOUTH CAROLINA    )
                           )         LEASE AGREEMENT
COUNTY OF RICHLAND         )

THIS LEASE AGREEMENT ("Lease") is entered into as of this _15_ day of April, 2014, by and between Korn Properties, LLC, ("Landlord"), and Clarkson and Korn, LLC, a South Carolina limited liability company, ("Tenant").

WITNESSETH

That Landlord, for and in consideration of the rents, covenants and agreements herein contained, does hereby grant and Lease to Tenant the following described Premises under the terms and conditions set forth herein:

1.    PREMISES. The office space (the "Premises") located at 1300 Pickens Street, Columbia, South Carolina 29201 as more clearly set forth on Exhibit "A" hereto (the "Property") containing approximately 3,320 square feet along with the two assigned parking spaces currently used by Wylie W. Clarkson and Tom Bijak and 12 additional undesignated parking spaces.

2.    TERM. The term of this Lease shall be for a period of two (2) full calendar years commencing on the lst day of May, 2014, ("Lease Commencement Date"), and expiring on the date which is two (2) calendar years after the Lease Commencement Date.

3.    RENT. Tenant shall pay to Landlord Sixty Thousand and 00/100 ($60,000.00) Dollars per annum rent for the Premises in equal monthly payments of five thousand and 00/100 ($5,000.00) Dollars commencing May 1, 2014.    Thereafter, rent shall be payable monthly in advance on or before the first day of each month without demand and shall be subject to adjustment pursuant to Sections 11 and 12 below.

4.    NOTICES. Until otherwise notified in writing by Landlord, Tenant shall make payment of rent and give notices to Landlord in care of: Peter Korn, 1300 Pickens Street, S.C. 29201. Landlord shall give notices and other communications to Tenant by mailing same to: Clarkson and Korn, LLC, 1300 Pickens Street. Columbia, South Carolina 29201.

5.    USE. The Premises shall be used as office space and related services and any other lawful purpose, but shall not be used for any illegal purpose, nor in any way that would increase the rate of insurance or invalidate the insurance coverage on the Premises, nor in any manner unreasonably interfere with or infringe upon the rights of Landlord or other tenants.

6.    IMPROVEMENTS.

A.    Tenant shall make no exterior or structural improvements, additions or alterations to the Premises without prior written consent of Landlord, which consent shall not be unreasonably withheld or delayed. Tenant may make, at its own cost, interior, non-structural improvements, additions, or alterations to the Premises without Landlord's consent. All additions, alterations and improvements allowed by Landlord shall be deemed to be the property of Landlord and shall not be removed by Tenant without Landlord's consent with the exception of any mounted machines or stand up shelves which shall remain.

7.    COMMON FACILITIES. Tenant, its employees, agents and invitees shall have the right to use in common with other tenants any, corridors, sidewalks, and parking areas as well as other general common facilities.

8.    QUIET POSSESSION. Landlord warrants that it is seized with good and sufficient title to the entire Premises, and further covenants that if Tenant shall discharge the obligations herein set forth to be performed by Tenant, the Tenant shall have and enjoy the quiet and undisturbed possession of the Premises without hindrance or interference from Landlord or any other person lawfully claiming by, through or under Landlord.

9.    SERVICES FURNISHED. If Tenant is not in default under the terms of this Lease Landlord shall provide the following services 1) trash removal (dumpster service). 2) Yard service in accordance with usual and customary schedule, use of storage space and internet service use.

Landlord reserves the right to stop service temporarily (but in no event for a period in excess of forty-eight (48) hours) of any of the foregoing because of accident or emergency, or for repairs, alterations, replacements or improvements that are necessary or desirable in Landlord's judgment.

10.    ELECTRICITY and WATER. Landlord is responsible for the cost of electricity and water at the premises during the term of the lease.

11.    PROPERTY TAXES. Landlord agrees to be responsible for the real property taxes on the Property

12.    DAMAGE TO PREMISES. If the Premises are damaged or destroyed by fire or other casualty, Landlord shall repair or restore the Premises within sixty (60) days after the date of damage and if not restored within that time, Tenant shall have the option of terminating this Lease; provided, however, that if the said damage shall occur within six (6) months of the expiration date of this Lease, Landlord shall have the right within fifteen (15) days to elect to terminate this Lease; and provided, further, that if, at any time during the Lease term or any renewal thereof, the Building in is totally destroyed by

**EXHIBIT "A", Page 36 of 47**

fire or other casualty, then Landlord and Tenant shall each have the right within fifteen (15) days to elect to terminate this Lease.

If the damage or destruction to the Premises was caused without fault of Tenant, the rent required by this Lease shall abate proportionately to the extent that the Premises are un-tenantable by Tenant.

In the event of the termination of this Lease, the term hereby granted shall cease, rent shall be apportioned and paid to the date of such damage, and Tenant shall not be liable for any further rent after such termination.

All furniture, trade fixtures, files and other property of Tenant located at the Premises shall be at the sole risk of Tenant, and Landlord shall not in any way be liable for damage to such property of Tenant.

Except as may otherwise be provided in this Lease, Landlord and Tenant mutually agree that in the event of loss or damage to the Premises and/or any contents, each party shall look first to any insurance in its favor before making any claim against the other party. To the extent possible without additional cost, each party shall obtain, for each policy of such insurance, provisions permitting waiver of any claim against the other party for loss or damage within the scope of the insurance, and each party to such extent permitted for itself and its insurers waives all such insured claims against the other party.

13.    MAINTENANCE AND REPAIRS.  Landlord shall keep the Premises in good care during the term of this Lease and shall surrender same with keys thereto at the end of the term in good and clean condition, reasonable wear and tear excepted.  Tenant shall immediately notify Landlord of any defective condition or to the Premises or any malfunction of the plumbing, electrical or heating and cooling systems.  Landlord shall be responsible for the correction of defects and structural repairs and replacement to the Premises during the term of this Lease except for damage caused by Tenant, its employees or agents in which case Tenant shall pay Landlord as additional rent the full cost of same within fifteen (15) days after receiving a statement for the amount of such damage.

14.    RIGHT OF ENTRY.  Landlord shall have the right to enter the Premises at reasonable hours to examine the same, or to install plumbing, electrical, telephone or mechanical lines, or to make such repairs, additions or alterations as it shall deem necessary, or to exhibit the same to prospective purchasers, or to exhibit the Premises beginning sixty (60) days prior to the expiration of the Lease term to prospective tenants.

15.    ASSIGNMENTS.  Tenant agrees that it will not assign or sublet in whole or in part any portion of the Premises without Landlord's prior written consent.  Consent will not be unreasonably withheld or delayed.  Any assignee or sub lessee must agree to abide by all of the terms of this Lease, and Tenant shall not be relieved from any of its

obligations assumed under this Lease.

16.    SUBORDINATION.  Tenant agrees that its rights under this Lease shall at all times be subordinated to the lien of any and all mortgages, ground or underlying Leases, or to the lien resulting from any other method of financing or refinancing, now or hereafter in force against the Property; provided that the mortgagee or other lienholder shall agree that so long as the Tenant is not in default under the terms hereof, Tenant's rights under said Lease shall not be disturbed and that if on account of foreclosure or sale pursuant to the terms of any such security instrument the lienholder or any other purchaser acquires title to said Premises, the new owner will attorn to the Tenant and complete the Landlord's obligations under this Lease provided Tenant is not then and does not thereafter default under the terms hereof.  Tenant agrees to execute any documents which may reasonably be required to effectuate the subordination.

17.    CONDEMNATION.  If, at any time during the term of this Lease, the entire Property or any such substantial part as may render it unsuitable for its current use is taken for any public or quasi-public use under statute or by right of eminent domain, then in such event, when title vests in the condemning authority, the term of this Lease shall immediately cease and the Lease shall terminate and rent shall be adjusted as of such date.  Tenant shall have no claim against the award made to Landlord for such taking or against Landlord for the value of any unexpired term of this Lease, provided, however, that Tenant may make a claim against the condemning authority for any moving expenses, loss of profits or taking of Tenant's personal property to which Tenant may be entitled.

18.    HOLD HARMLESS.  Tenant agrees to indemnify and save Landlord harmless against any and all claims, demands, damages, costs and expenses, including reasonable attorney's fees for the defense thereof, arising from the business operated by Tenant in the Premises, or from any breach or default on the part of the Tenant of any covenant or provision of this Lease, or from any act of Tenant, its employees or agents, and Tenant agrees to defend any such action or proceeding by counsel reasonably satisfactory to Landlord.   Landlord shall not be responsible for the carelessness or negligence of other tenants.

       Landlord agrees to hold Tenant harmless for injury to any person by virtue of any structural or other defect in the Building.

19.    DEFAULT.

       (A)    Any of the following occurrences or acts shall constitute an event of default hereunder: If the Tenant shall:

       1.     Fail to pay the rent or any additional rent as provided within this Lease and Tenant fails to cure such breach within ten (10) days after written notice thereof; or

2.   Fail to perform any of the covenants and agreements required under this Lease, and fail to cure such breach within thirty (30) days after written notice thereof (or, if such breach cannot be reasonably cured within thirty (30) days, if Tenant fails to institute efforts to effect a cure within thirty (30) days and thereafter pursue such cure to completion; or

3.   Vacate or abandon the Premises prior to the expiration of the term or suffer the Lease to be taken under any writ of execution, or

4.   File a petition in bankruptcy, insolvency or for reorganization, or if such is filed against Tenant;

5.   Make an assignment for the benefit of creditors.

(B)   If an event of default shall have happened and be continuing, Landlord may at its option terminate this Lease and all rents then due and which would become due during the remainder of the term, together with such special damages that Landlord may suffer, shall immediately become due and payable.  Landlord shall also have the right of re-entry and repossession of the Premises and may expel Tenant and remove all property there from with the right to sell same and apply the proceeds against any amounts due under this Lease.  Landlord may at its option without terminating this Lease have full right of entry and may make such reasonable alterations and repairs as may be needed in order to relet the Premises or any part thereof upon such rental, terms and conditions as it deems advisable, and Tenant shall remain liable to Landlord for any deficiency between the rent reserved hereunder for the remainder of the term and the rental, if any, obtained by Landlord in re-letting.

20.   ATTORNEY'S FEES.  If either party defaults in the performance of any of the covenants of this Lease and by reason thereof, the non-defaulting party employs the services of an attorney at law to defend it or enforce performance by the defaulting party, then the defaulting party shall pay a reasonable attorney's fee and all reasonable expenses and costs incurred by the non-defaulting party should the non-defaulting party prevail on the merits of any litigation, compromise, arbitration or mediation of the dispute.

21.   NON-WAIVER.  The failure of Landlord or Tenant to insist upon strict performance of any of the terms, conditions and covenants herein shall not be deemed to be a waiver of any rights or remedies that Landlord and Tenant may have, and shall not be deemed a waiver of any subsequent breach or default in the terms, conditions and covenants herein contained except as may expressly be waived in writing.

22.   HOLDING OVER.  In the event Tenant shall continue to remain in and occupy

the Premises with the consent of Landlord after the expiration of the term of this Lease, such holding over shall not be deemed in any way to be a renewal or extension of the term of this Lease, but shall constitute a tenancy from month to month only, subject to all of the covenants and conditions of this Lease other than those relating to the term hereof, for which tenancy Tenant agrees to pay Landlord as rental the amount of monthly rental in effect at the end of the term.

23.    NON-EASEMENT.  It is understood and agreed that this Lease does not grant any rights to light and air over land adjoining the Property.

24.    GENERAL.

A.    TIME OF THE ESSENCE.  It is understood and agreed between the parties hereto that time is of the essence in all of the terms and provisions of this Lease.

B.    GOVERNING LAWS.  This Lease shall be governed by and construed according to the laws of the State of South Carolina.

C.    CAPTIONS AND TITLES.  The captions and titles appearing within this Lease are for reference only and shall not be considered a part of this Lease or in any way to modify, amend or affect the provisions thereof.

D.    GRAMMATICAL CHANGES.   The proper grammatical changes shall be understood and shall apply where necessary to designate the plural rather than the singular and the masculine or feminine gender.

E.    RECORDATION AND DOCUMENTARY STAMP TAXES OR RECORDING FEES.  This Lease shall not be recorded, but a short form referring to this Lease describing the Premises and setting forth the term thereof may be recorded by either party.  The cost of South Carolina Recording Fees due shall be paid by the party requesting the recordation of the short form lease.

F.    ENTIRE AGREEMENT.  This Lease and the exhibits attached hereto and forming a part hereof set forth all of the covenants, promises, agreements, conditions and understandings between Landlord and Tenant concerning the Premises.  No subsequent alteration or amendment of this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by each party.

G.    NO PARTNERSHIP.  Landlord does not, in any way or for any purpose, become a partner of the Tenant in the conduct of its business, or otherwise, or a joint venture or a member of a joint enterprise with Tenant.

H.    BINDING AGREEMENT.  The conditions, covenant and agreements contained in this Lease shall be binding upon and inure to the benefit of the parties hereto and their respective successors, heirs, executors, administrators and assigns.  No rights, however, shall inure to the benefit of any assignee of Tenant unless the assignment to

**EXHIBIT "A", Page 40 of 47**

such assignee has been made in accordance with the provision set out in this Lease.

25.    LANDLORD AND TENANT WARRANTIES.   Each of Landlord and Tenant warrant separately that they have not dealt with any real estate agents, brokers or companies and that no real estate commissions or fees are payable as a result of this Lease.

In Witness Whereof, the Parties hereto set their hand to this Lease on the date first written above.

WITNESSES:                                       LANDLORD:  Korn Properties, LLC

_____        _____

_____        Peter D. Korn,  _Owner_____

WITNESSES:                                       TENANT: Clarkson and Korn, LLC

_____        _____

_____        Wylie W. Clarkson, Managing Member


STATE OF SOUTH CAROLINA        )
                                                        )        **PROBATE**
COUNTY OF RICHLAND              )

PERSONALLY appeared the undersigned witness and made oath that (s) he saw the within named Clarkson and Korn, LLC, by Wylie W. Clarkson, Managing Member, sign, seal and, as its act and deed, deliver the within Lease and that (s)he with the other witness subscribed above, witnessed the execution thereof.

Sworn to before me this 14th
day of April, 2014.

_____
Notary Public for South Carolina
My Commission Expires: 5|16|2018

STATE OF SOUTH CAROLINA    )
                                 )      **PROBATE**

COUNTY OF RICHLAND       )

      PERSONALLY appeared the undersigned witness and made oath that (s) he saw the within named Korn Properties, LLC, by Peter D. Korn, _Owner_____ sign, seal and, as its act and deed, deliver the within Lease and that (s) he with the other witness subscribed above, witnessed the execution thereof.

Sworn to before me this _15_
day of April, 2014.

Notary Public for South Carolina
My Commission Expires: August 1, 2022

1300 Actions

1,250 Sq. Ft. File Storage

170 Sq. Ft.

2050 Sq. Ft.
170 Sq. Ft. Office

Collections Space   3,470 Sq. Ft.

# EXHIBIT "K"

## ADVERSE CHANGES

NONE

EXCHIBIT "L"

## ASSIGNMENT AND ASSUMPTION AGREEMENT

**THIS ASSIGNMENT AND ASSUMPTION AGREEMENT** (this "**Assignment**") is made and entered into as of _April 15, 2014_, by and between **CLARKSON AND KORN, LLC,** a South Carolina limited liability company ("**Buyer**"); and **KORN LAW FIRM, P.A.,** a South Carolina professional association and Peter D. Korn, individually, ("**Seller**").

### Background Statement

Seller and Buyer are parties to that certain Asset Purchase Agreement dated as of even date herewith (the "**Asset Purchase Agreement**"), pursuant to which Buyer has purchased certain assets of Seller. This Assignment is being delivered in connection with, and as contemplated by, the Asset Purchase Agreement.

### Statement of Agreement

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants contained herein. and for other good and valuable consideration, the receipt, adequacy and legal sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1.     **Capitalized Terms**. Capitalized terms used but not defined herein shall have the meanings for such terms that are set forth in the Purchase Agreement.

2.     **Assignment and Assumption**. Effective as of the Closing Date, Seller hereby assigns, sells, transfers and sets over to Buyer all of Seller's right, title, benefit, privileges and interest in and to those specific contracts more fully enumerated as Exhibit "E" of the Asset Purchase Agreement between the parties of even date. Buyer hereby accepts this Assignment and assumes and agrees to observe and perform all of the duties, obligations, terms, provisions and covenants, and to pay and discharge all of the liabilities of Seller to be observed, performed, paid or discharged from and after the Closing Date, in connection with the Assumed Liabilities. Buyer assumes no liabilities arising before the Closing Date (other than the Assumed Liabilities) and assumes no Excluded Liabilities, and the parties hereto agree that all the foregoing shall remain the sole responsibility of Seller.

3.     **Terms of the Purchase Agreement**. The terms of the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein. In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

4.     **Further Actions**. Each of the parties hereto covenants and agrees, at its own expense, to execute and deliver, at the request of the other party hereto, such further instruments of transfer and assignment and to take such other action as such other party may reasonably request to more effectively consummate the assignments and assumptions contemplated by this Assignment and Assumption Agreement.

5.    **Notice**.  Any and all notices or other communications required or permitted to be delivered hereunder shall be delivered in the manner set forth in the Purchase Agreement.

6.    **Assignability**.  This Assignment shall not be assignable by any of the parties hereto without the prior written consent of the other party.  This Assignment and Assumption Agreement shall inure to the benefit of and be binding upon the successors and any permitted assigns of Purchaser and Seller.

7.    **Governing Law**.  This Assignment shall be governed by and construed in accordance with the domestic laws of the State of South Carolina without giving effect to any choice or conflict of law provision or rule (whether of the State of South Carolina or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of South Carolina.  Each of the parties consents to the jurisdiction of the federal and state courts as set forth in the Purchase Agreement.

8.    **Entire Agreement**.  This Assignment, together with the Purchase Agreement (and the Schedules and Exhibits thereto), and other documents delivered or to be delivered pursuant to the Purchase Agreement contain or will contain the entire agreement among the parties hereto with respect to the transactions contemplated herein and supersede all previous oral and written agreements.

9.    **Waiver**.  Any failure of Seller or Buyer to comply with any obligation, covenant, agreement or condition herein may be waived in writing by Buyer or Seller, respectively, but such waiver or failure to insist upon strict compliance with such obligation, covenant, agreement or condition shall not operate as a waiver of, or estoppel with respect to, any subsequent or other failure.

10.    **Amendment**.  This Assignment may be amended, modified, or supplemented and any provision may be waived only by written agreement of Seller and Buyer.

11.    **Severability**.  If any clause, phrase, provision or portion of this Assignment and Assumption Agreement or the application thereof to any person or circumstance shall be invalid or unenforceable under applicable law, such invalidity or unenforceability shall not affect, impair or render invalid or unenforceable the remainder of this Assignment and Assumption Agreement, nor any other clause, phrase, provision or portion hereof, nor shall it affect the application of any clause, phrase, provision or portion hereof to other persons or circumstances.

[The remainder of this page is left blank intentionally.]

2

IN WITNESS WHEREOF, the parties have executed this Assignment and Assumption Agreement as of the date first above written.

**SELLER:**

**Korn Law Firm, P.A.**

By: _____
Peter D. Korn, ___President___

**BUYER:**

**Clarkson and Korn, LLC**

By: _____
Wylie W. Clarkson, Managing Member

3

**EXHIBIT "A", Page 47 of 47**